Schultz, when you are ready, sir. Good morning, Your Honor. May it please the court, my name is Christopher Schultz and I represent the appellant, Northeast Independent School District. Make sure you speak up so that we can all hear you. Yes, Your Honor. Northeast ISD did a phenomenal job educating IM despite his behaviors. Phenomenal. Those aren't my words. During oral argument, the district court told us there were many good things done for IM, along with the effort and the money expended on his behalf. The staff did a phenomenal job with him, and that's a record on Appeal 3084. To me, isn't that special education? Hovum states, the whole educational experience and its adaptation to confer benefits on the child is the ultimate statutory goal of the IDEA. Special education is about changing the programming so that a student can benefit. If benefits are the goal, we exceeded that goal. The district court's decision and factual findings are unmistakable that Northeast ISD both endeavored to address IM's behaviors and that he received a meaningful academic and non-academic benefit. You know, Mr. Schultz, these are difficult cases, and they always are. One thing that tends to come up is the standard of review, of what we're actually reviewing, because there are multiple layers in cases like this. So if you could give me your view of what exactly we're reviewing. I mean, you're asking for the district court to be overturned, right? Yes, Your Honor. And so what are you asking us to review, and what is the standard? Because, you know, if it's clear error, it's going to be tough. Right. The Fifth Circuit is pretty clear. It's that the determination of a fate are mixed questions of law and fact. The factual findings are reviewed for clear error, but the conclusions of law are reviewed de novo. This is set forth in the Spring Branch v. O.W. case, 961 F. 3rd 781, and the E.R. v. Spring Branch case, 909 F. 3rd 781. Now that's my general understanding, so if you could tell us, where did the district court go wrong, and is it a de novo or a clear error? Is it a legal problem or a factual problem? This is a legal problem, Your Honor. We are not necessarily challenging the findings of fact. The findings of fact, we believe, are that under Factor I, whether the IEP was individualized, the district court set forth several areas in which the Students ARD Committee tried to address the elopement and toileting. We agree with those findings of fact. The district court's findings of fact are also in the 21-22 school year that IM was appropriately progressing and mastering some of his IEP goals. The district court also found the mother was pleased with IM's academic progress. The next school year, after the summer of 22 ESY services that were really at dispute in this case, the district court said he made academic and non-academic progress. Where did the district court go wrong? Where the district court went wrong is that the district court made a finding that the student made academic and non-academic progress, and we believe the district court said that progress was meaningful to the student, but yet ruled against us in the fourth factor of whether the student received academic and non-academic benefit. So in the findings of fact, the court said he received a meaningful benefit, but applied the fourth factor in such a way that he did not receive a benefit. That is the court's ultimate error. All right, so fourth factor of Michael F. Yes, sir. He also ruled against us in the first factor of Michael F. as to whether the IEP was individualized. We believe that an IEP must only be reasonable. The standard is not whether the IEP is ideal. We feel the error there is that the district court failed to acknowledge that Northeast ISD was aiming to address the student's elopement and toileting. I argued this in a briefing, but in Diaz versus Waxahachie, and I know Justice Graves, it's a case you were involved with. It was noted in that case that it is largely irrelevant if the school district could have employed more positive behavioral interventions, as long as it made a good faith effort to help the student achieve the educational goals outlined in the student's IEP. We believe that reading the district court's decision, the findings of fact, there should be no doubt that Northeast ISD made a good faith effort to help the student achieve the educational goals in his IEP. Reviewing the record, we believe Judge Ezra also felt that there was a good faith effort. He noted that in the oral argument. The IEP included a low staff-to-student ratio. In April 22, the ARD committee amended that staff-to-student ratio based on his individualized needs, identifying periods of transition as particularly problematic. He had a behavior intervention plan to address elopement. He had a personal care section in his IEP to address toileting. He received extended school year services to address elopement and toileting. In the summer of 2021, he received four weeks. In the summer of 2022, the ARD committee bumped that up to six weeks. In the spring of 2022, the ARD committee requested a functional behavior assessment to address his elopement behavior. This assessment was in progress at the beginning of the fall 22 semester. The parent ultimately agreed with the evaluation results. That evaluation was used to develop a token system to address his elopement behavior. And that's a record on appeal 758. The ARD committee requested an occupational therapy evaluation to address the student's sensory issues. The ARD committee in the fall of 22 offered an in-home training evaluation to address elopement at home and in the community. They installed a safety vest on the bus to address periods of time when he was receiving transportation. And they installed locking mechanisms on the playground and retrained staff during the one time he eloped off campus. So these are the actions of an ARD committee that is aiming to address the student's disabilities. And we feel that is, Justice Duncan, where the district court erred. If he would have answered the question of whether the ARD committee was aiming to address his behaviors and applying the correct legal analysis, that's an easy yes for the reasons that I just stated. Something that comes out of the briefing, I believe, was the idea of the student regressing after breaks. Is that right? The district court was concerned about that, about, oh, it did well, and then a break, and then regression. More elopement, more toileting issues. Could you speak to that? Yes, Your Honor. So what the courts have said about academic progress is that it is not required for a student to progress across the board. Michael F. does not require progress in what the district court determined were key areas. And we're not required to remedy the student's disability. The requirement under Michael F. is the demonstration of a meaningful academic and non-academic benefit. This court has said it's not necessary for a student to improve in every area to obtain an educational benefit from their IEP, and that's in Houston ISD versus Bobby Arndt. So yes, even if he was regressing in elopement and toileting, it seems to me there are two questions. Was the art committee responsive in trying to address these behaviors? We believe there were a number of interventions that were done for IM. One of them that I didn't mention was consulting with his private behavioral therapist to try to come up with strategies that were being in place at his clinic to use within the school system. So was the art committee responsive to that? And second, when those behaviors are happening, can the student still receive an academic and non-academic benefit? And to your point about whether he is regressing, the cases in the Fifth Circuit, they are full of instances in which students are struggling. There are not a lot of cases that get here where the student has a perfect academic record. Most of the cases here, you can identify some areas where there are some significant struggles, yet the students are still receiving a free and appropriate public education. And I want to go back to Michael F., and not necessarily the four-factor test, but Michael F., the student. In the fall of 1992, he entered SciFair ISD. He was yelling inappropriately, calling other students gay, touching students in a sexual way, talking back to his teacher, licking his materials. In the spring semester, he got into two physically violent episodes. He was removed from school on an emergency basis and placed on home instruction. And then in the fall, he continued to disrupt class, insulted teachers and administrators, continued to get into fights. Then in October, Michael got in a fight with a girl in class, pinned her head to the ground with his knee, and ripped out her hair. A month later, the parents removed him from SciFair ISD and sent him to a residential treatment facility. The parents filed a hearing against SciFair ISD. The hearing officer said he was not receiving a benefit because of the behaviors I noted. The district court overturned that decision, and that is where the four-factor test was born. The Fifth Circuit agreed that the hearing officer's decision should be overturned because they noted that even with the evidence of those behaviors, and I would argue those behaviors were increasing, they were getting worse, he was still receiving academic and non-academic benefits. It is not necessary for a student to improve in every area. In many instances, there are going to be significant behaviors, but is the Art Committee endeavoring to address those behaviors? In Michael F., they were changing his placement, attempting behavioral interventions, and in the midst of all those interventions, in the midst of the storm of those behaviors, he was receiving academic and non-academic benefit. Michael F. is a student that was forcibly removing the hair from a girl's head. In this case, we have a student that the record shows was eloping roughly two times a week, roughly 45 seconds at a time, and for that reason, we've denied him a free and appropriate public education. We feel like we tried to design a program to address these behaviors. We conducted assessments. We consulted with his private providers. We developed a token system. He had a very, very low staff-to-student ratio. There were times where he had a staff-to-student ratio for direct instruction, and there were times where he had two staff members on him for periods of transition. We tried to address behaviors in the home and in the community. The parent didn't accept that, but it was something that was offered. Reading the district court's decision, again, did we aim to address the student's behaviors? I think the answer is very clear, yes, we tried to do that. Did he receive academic and non-academic benefits? The findings of fact are clear. In the 21-22 school year, yes, he did. In the 22-23 school year, yes, he did. Those are the findings of fact, and those findings of fact meet factor one, and they meet factor four of the Michael F. case. There are plenty of cases where students can continue to have issues with behavior. Like Michael F., the end of his term with the Cypher ISD, he ripped the hair out of a girl's head. There's a case, AA v. Northside. That student continued to have issues with homicidal ideations. He was hospitalized for most of the school year. This court ruled he was still receiving a free and appropriate public education. There's another case that Justice Graves was involved with, BS v. Waxahachie. That student attacked a police officer, but in the midst of the storm of the behaviors. What is the Art Committee doing about it? This case is clear that we're acting upon those behaviors, endeavoring to fix them, and he benefited from his education. Okay. Thank you, Mr. Schultz. You've saved five minutes for rebuttal. Thank you, Your Honor. Let's see. Ms. Moniz. Good morning. Good morning. May it please the Court. My name is Evanelda Moniz, and I'm here with Roy Atwood on behalf of IM. Some others here also. I'd like to address three points with the Court. Unless this Court finds the District Court Committee clear error, this Court must uphold Judge Ezra's decision. Point number two, for a nonverbal autistic child like IM, who depends on a voice-active device to communicate, regression in behavior is denial of faith. Number three, cases Northeast ISD argues support a reversal of the decisions of two judges are not relevant in a faith analysis for a nonverbal autistic student with significant behavior problems like IM. This case is not about what he got. It's about what he didn't get. What is it that he—because I just heard counsel opposite talk about all the things that the Art Committee had done. So could you zero in on what was not done that should have been done so that the IM would have received a favor? So there was a time that the District, in his fourth grade year, they completed a behavior functional analysis. And then they go back to Art, but they made no change in his behavior intervention plan. None. So what they had was ineffective. There was times that he was eloping, like you said, two times a week. There's actually some—second grade, he was eloping 80% of the time. She was able to get it down to 12%, I mean, 22%, but it was only 12 elopements at the end of the second grade. Then it goes to the third grade, and they never got to that point again. They could never get it to 12 days without elopement. They did get five. But anyway, they did not make changes to the behavior intervention plan. They didn't make changes to the behavioral strategies that they were using. They didn't make changes to any of his autism supplement, which there's specific requirements in Texas State. What changes should they have made? What changes should they have made? Yeah, what should they have done differently? So when he was in the second grade, they had a goal that he should get 30— he should go 30 consecutive days without elopements. They had a plan in place. He had a different teacher in the second and third grade. There was a new teacher in the fourth grade. What they should have done was not have breaks between school and services because when he had those breaks, that's when he would come back. He would regress. For instance, in the third grade, he had ESY services. He had no toileting accidents. He comes back in the fourth grade, and he had, I believe it was, 22 accidents in 40 days. And then elopement continued to be an issue. The hearing officer found the elopement data from the fourth grade. It was a new teacher, and she took data differently. The hearing officer could not depend on what she reported. It also—another issue is that we only go through November 4th, 2022, because that's the time that the mother filed the due process complaint. So it wasn't all of the fourth grade that we're talking about. Some of the progress that he mentions was after the fact. Let me get back. I don't think I got to my points. Point number two, a nonverbal autistic student like I am who depends on a voice output device to communicate regression in behaviors denial of faith. Cases Northeast ISD argues to support a reversal of the decisions of both judges are not relevant in a faith analysis for a nonverbal autistic student with significant behavior problems like I am. Let me tell you about I am. At the time of the hearing, he was a nonverbal 10-year-old who has autism, is intellectually disabled, speech impaired, who was displaying significant behavioral problems at school. He has communication and socialization deficits, engages in repetitive behaviors, and displays unusual sensory responses. He uses an augmentative assistive communication device, a voice output device similar to a small IEP, to communicate, but he still gets frustrated due to his inability to get others to understand him. He has limited vocabulary on his voice output device. Since at least the second grade, he was running out of the classroom and from staff and having toileting accidents such as peeing in the classroom. At the end of the second grade, he went 12 days without eloping. But once he returned to school after summer break, he exhibited significant regression in toileting and elopement without maintaining or recouping any progress in those critical skills. So that's why I asked for your opposing counsel. The problems seem to have to do with the breaks. Exactly. So again, I just have to ask again, what is the plan? What are the changes that are supposed to be made to prevent that? Because if there was progress being made, it sounds like there was progress being made, but then regression. So I'm not hearing specifically what should the plan do then. So his mother asked to minimize those breaks, the school breaks. Okay, what does that mean in terms of an IEP? What's to minimize the breaks? Okay, so the standard ESY services with this district was four weeks, and typically it was done in June. So the kids, after the Fourth of July, they did not return until August. So he would go between the second and third grade, he went six weeks without services. When he returned, that's when he regressed. He had a lot of problems. The next time, his teacher noticing and his mother agreeing, he continued to have regression after breaks, even after Christmas and spring break. So between the third and fourth grade, they gave him six weeks. They added two additional weeks. But when he came back, he still had problems. So we go back to he needs additional services during the summer. They need to minimize the breaks that he has to maintain those skills. Okay, so minimizing the breaks. Okay, so that sounds like something concrete. Yes, and that's what the hearing officer ordered. He ordered ESY the whole summer. So there was a minimized break between the last day of ESY and the beginning of school. So the first point, Judge Ezra did not commit clear error. His decision should be upheld. Judge Ezra conducted a virtually de novo review, thoroughly reviewed the administrative record, accorded due weight to the hearing officer findings, including his credibility findings, and ultimately reached an independent decision based on the preponderance of the evidence. Underlying findings of fact, such as the needs of a minor student, whether the student obtained an educational benefit from the school's specialized services, are reviewed for clear error. In Anderson v. Bessemer City, the Supreme Court stated, where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. Well, I mean, you heard counsel opposite say they actually accepted all the fact findings.  And that, instead, we were having a challenge to the legal determinations on the first and the fourth factors. So if you could respond to that. Right. Both the hearing officer and Judge Ezra found Northeast ISD violated IM's right to effect by failing to address his regression and critical skills, specifically elopement in the classroom and toileting accidents. On Halloween of 2022, IM ran out of the classroom, down the hall, past the front office, out the front door, across the playground and off school campus. No one from the school was able to stop him. He ran through the neighborhood and across a heavily trafficked highway where drivers had to stop to avoid hitting him. Luckily, he was caught by strangers and detained before he was hit. He couldn't tell anybody who he was or where he came from because when he runs, he has no regard for his safety and doesn't think to take his voice output device with him. Finally, the school principal showed up and took him back to campus. He had been missing for 30 minutes. The hearing officer wrote, this incident demonstrates for student elopement is a critical skill that if not addressed and maintained will result in a substantial risk of immediate physical harm. His mother had been complaining about elopements and his toileting problems since the second grade. Not only did she notice an increase in regression in elopement and toileting after school breaks, but so did his teacher. I'm sorry to interrupt, but we've obviously read the facts. We're familiar with the facts. My question was, accepting all the facts as accurate, what about the findings on this? Because this is, look, these cases are difficult. We have had many of them, and this is one where two of the factors, if I'm not mistaken, were found in favor of the school, but two of the factors were found in favor of the student, right? Right. Okay, so speak, and the counsel opposite is saying, well, that's a legal error on factor one and four. So why was the district court not legally erroneous on those two factors? Two factors that they found for the district in Michael F. were not at issue in this case, the LRE issue and the collaboration. Yeah, there are four factors in Michael F. So the court found that the first and the fourth favored your client. Right. So Judge Ezra found he failed to make sufficient non-academic progress in key areas such as elopement and toileting. He agreed with the hearing officer in weighing his non-academic progress more heavily than his academic progress. Northeast ISD argues Judge Ezra erred by relying on non-academic progress when the court focused, since Klein ISD versus Holman has been, was decided, the focus has been on overall academic achievement. Like the student in O.W. where behavior was an issue, and this court found that because of the deterioration in O.W.'s behavior, he was denied a fact. What do you mean a fact? So what determines fate for students like the students in Holman and H.W. should not be comparable to what determines fate for a non-verbal autistic student like I.M. with substantial regression in behavior and skills related to independence. If you could fill in the blank here, I.M. was denied a fact because? They could never address his regression despite the services they were providing. They didn't make a change to those services.  And the change should have been shorter breaks, fewer breaks? Is that what we're talking about? That could have been one of them, yes. Didn't the district offer some in-home evaluation? Yes. And was that refused? At first she had accepted, but then she asked for them to do it on weekends, and the school district could not do it on the weekend. She's a single mother, wouldn't get home until 6 o'clock, and so the school wouldn't do it on weekends. She had agreed to the evaluation. She also was receiving in-home training from his private therapist, a BCBA who's actually trained in autism. The in-home trainer they would send from the school district would not be a behavior specialist. It would just be an in-home trainer. So she did get some in-home training? Yes, she did, just not from the school district. And during what hours did she get it? Because you're saying she wasn't available to get it from the school district during the week. So when she got it from the training she did get, what hours did she get it? Weekends? She was getting it when she'd pick him up in the afternoon right after school, I mean at 5. After school? No, after work. When she'd pick him up, he would go to the afternoon, he would go to ABA therapy. This child was receiving 20 hours of ABA therapy a week. And those trainers, those BCBAs, the board-certified behavior analysts, were providing her training when she'd pick him up. So what determines fate for students like the students in HW versus Camille ISD should not be comparable to what determines fate for a non-verbal autistic student like I am with substantial regression in behavior and skills-related independence. At the core of the IDEA is its focus on the unique needs of a particular child in preparation for further education, employment, and independent living. What is fate for each child is based on the unique characteristics of the student and meaningful educational benefit they receive from the specially designed, personalized instruction tailored to their needs. I'm sorry? I'm sorry. Fate for each of these students is unique. I am, a non-verbal autistic student, is not like either student in HOVM or HW. The obvious difference is the students in HOVM and HW are verbal. I am is not. He relies on a voice output device to communicate. Student in HOVM and HW were instructed in general ed classrooms on the general ed curriculum, while I am was instructed in self-contained special education classrooms where the focus was on daily living skills. Both the students in HOVM and HW achieved on grade level, and the student in HOVM was college-bound. I am can't achieve on grade level. Neither student in HOVM and HW exhibited significant behavior problems like I am. Neither student in HOVM and HW exhibited problems with independent skills like toileting. Neither student in HW were eligible for ESY services because they regressed in behavior and skills related to independence or were in danger of losing critical skills during school breaks. These are critical factors that should have been taken into account, that should be taken into account in determining whether a student was denied fate. So while it was appropriate to determine if the students in HOVM and HW received a fate by focusing on their overall academic achievement, it would not be appropriate for a nonverbal autistic student like I am, who receives instruction in daily living skills. If we affirm the district court, what is going to happen? They'll provide more services. Like, for example? The eight weeks, the ESY, the hearing officer provided, I mean, ordered ESY services all summer long. Okay. And that's what we need. And instead only two weeks were provided, is that right? Or how much was provided of ESY? So they would, the standard is four weeks. Okay. And that's what they were offering at the last hour. Okay, four weeks. Four weeks versus how many? Eight. Okay, and did they provide only four or more than four? We want them to provide more than four. They did not provide, they just provided four. The second time when the teacher requested two additional weeks, so it was six weeks, but he still regressed. So did they provide the additional two weeks? After, yes. So they did? They have, yeah. Okay, they have provided the additional two weeks. So there's just two weeks where they're not being provided. No, because when they went to the November 4th, right before she filed, they went back to the four weeks. When the regression occurred, how many weeks was ESY not being provided? Approximately, the first summer was eight weeks. The second summer. They were not being provided? Right, all of July and August. Okay, does the record reflect when four weeks were provided? Yes, the second grade. The second grade. Four weeks were provided. Was there regression following that?  Okay. So in your view, is the only way a FAPE can be provided is to provide ESY the entire summer? Yes. Okay. The other thing that was affirmed was the voice output device. He was denied his voice output device after ESY services. So during the second to third grade, in July and August, he did not have his voice output device from the school district. That's another thing the hearing officer ordered, is that he have access to that year-round. Okay. So that would also be affirmed. All right. So IM's case resembles a case like Spring Branch Independent School District versus O.W., where behavior interventions did not work, and O.W.'s behavior regressed to the point his school day was shortened. This court found O.W.'s behavior deteriorated to the point that he was denied educational benefits and that failure denied him FAPE. The court said this regression shows neither an educational nor a behavioral benefit. IM's regression shows the same thing. In a recent decision by your own colleagues in Boone versus Rankin County Public School District, school district's plan for a severely autistic student was insufficiently individualized to meet his needs because it failed to address his elopement tendencies. Further, the district court failed to consider that a child... In that case, in the Boone case, what did the school fail to do to address elopement? They didn't have a plan at all. They didn't have a plan at all. Okay, so here there was a plan. But it was ineffective. It didn't work. So Boone didn't have a plan at all. Here you're saying they do have a plan, but it didn't work. And they never changed it. It stayed the same. Even though they were gathering all this evidence of regression, they didn't make any changes. They did a functional behavioral assessment. There's no changes. He mentioned a token economy. There's nothing in the record that shows that. Okay. Thank you.  So in summary, Judge Azzaro did not commit clear error. His decision should be upheld. For a nonverbal autistic student like I am, regression in behaviors like elopement and skills related to independence like toileting is denial of faith. Cases Northeast ISD argues support a reversal of the decisions of both judges are not relevant in a FAPE analysis for a nonverbal autistic student. Okay. Thank you, Ms. Menees. We have your argument. Mr. Schultz, you have five minutes for rebuttal. Thank you, Your Honor. A couple things I'd like to address very briefly on the voice output device. There was a notation from the district court that we did not appeal the finding of the voice output device. That was very clearly in our original petition to the district court at Record on Appeal, page 24. We argued that the case was not moot because of, in part, the voice output device finding at Record on Appeal 2830. So we're not quite clear why the judge said that. What about the – I mean, it sounded like you heard my colloquy with opposing counsel. The amount of ESY seems to be a major issue. So they say, well, no, you needed ESY all summer. You didn't provide enough ESY. And then the gaps because of that caused regression. Yes, Your Honor. A couple things that I would like to respond with on that point. This is a case where, like in the boon, there was no plan to address elopement. In our case, there were a lot of things that I expressed to you. Yeah, yeah. I heard you say them. They say, well, it's ineffective. And this is a case about a disagreement about how to address the behaviors. This is not a case about failing to address the behaviors. Look at the points in time in which these decisions were made. In the April 22 ARD meeting, the original meeting to discuss the summer of 22, and it is in the record at Record on Appeal 524, the parent expressed in the deliberations of the IEP that she was happy with how the teacher was working with IM on the elopement behavior and that he made progress by responding to the word stop, which she, in the record, says a big improvement. And the request for a full day of ESY and an extended summer of ESY, and this shows up in the district court's record, the original request for this was made because she was a single parent and she would have to potentially decline this because it didn't align with her work schedule. This was a heart goes out to her as a single parent. So what did the district court find with respect to that? Did the district court make a finding with respect to provision of ESY, all this? The district court made a finding that additional weeks should have been provided, and they affirmed the hearing officer's decision. But what Northeast ISD was trying to do was they did not feel that a full summer of ESY was what was needed, but what they did in the spring semester is they initiated the reevaluation of his behaviors, and that evaluation was in place in the fall 22 semester. There is no finding of fact by the district court that nothing was done in response to the evaluation. There's no finding of fact there. But there are facts that indicate that what was done was not effective. I mean, the elopements continue, the toileting issues continue. Yes, Your Honor. On the toileting, and this really goes to the first factor, is that in the consultation with the private providers, that's the first time that Northeast ISD learned that the student was on a laxative. And you only get to finding out this information by being a proactive ARD committee and trying to learn about the student's behaviors. And when they consulted with the private providers, and this is reflected in the ARD committee meeting, that the individuals all agreed that he was not having full bowel movements in his underwear or full urinations in his underwear, but he was having what they determined was leakage. And so they used that information from the private providers to change the way in which the data was collected based on the information that he was on a laxative. So they were continuing, even in the fall semester, to try and address those behaviors. And there's no finding of fact that nothing was done. Counsel said it would be not appropriate to look at his overall academic achievement. That would just be completely changing the Fifth Circuit precedent. Okay. Thank you, counsel. Thank you for the well-argued case. The case is under submission.